## DE FOREST v. HARTLEY et al.

## WHITE v. DE FOREST et al.

(Court of Appeals of District of Columbia. Submitted November 12, 1925. Decided January 4, 1926.)

Nos. 1761, 1762.

1. Patents ⬅️90(5)—Tests by one employed by same company as inventor held a reduction to practice.

Tests made by research engineer of device disclosed by another, who was employed by same company, *held* a reduction to practice of invention.

2. Patents ⬅️113(7)—Error on part of Patent Office in case involving highly technical subject-matter must be clearly shown.

Error on part of Patent Office tribunals in case involving a highly technical subject-matter should be very clear, to warrant or justify court in disturbing conclusions reached.

3. Patents ⬅️90(5)—Delay in filing application by one who has established prior conception and reduction to practice is not bar to award of priority.

Where prior conception and reduction to practice is established, delay in filing applica-

tion is not a bar to award of priority, in absence of concealment or abandonment.

Appeals from the Commissioner of Patents.

Interference proceedings between Lee De Forest, Ralph V. L. Hartley, and William C. White. From a decision of the Commissioner of Patents, awarding priority to Hartley, De Forest and White separately appeal. Decision on each appeal affirmed.

S. E. Darby and S. E. Darby, Jr., both of New York City, and C. M. Thomas and F. D. Thomas, both of Washington, D. C., for appellant De Forest.

A. D. Lunt and H. E. Dunham, both of Schenectady, N. Y., and I. J. Adams, of New York City, for appellant White.

F. T. Woodward, G. W. Rich, and J. W. Schmied, all of New York City, for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeals from a decision of the Patent Office in an interference proceeding awarding priority to the party Hartley.

The invention relates to wireless signaling systems that involve the use of an audion or "electron discharge device" for producing continuous electrical waves of radio frequency. The audion is provided with three electrodes, designated plate, grid, and filament. In these systems it was usual to apply modulating potentials of audio or speech frequencies to certain of the audion circuits, to vary the amplitude of the radio frequency waves to transmit intelligence. The improvement over the prior art essentially consists in applying in such systems the audio frequency potentials to "the plate circuit" of the audion. Certain of the counts define the apparatus; others, the method. Some include an antenna, while others specify merely the oscillation circuit. Counts 1, 5, and 8 are sufficiently illustrative and are here reproduced:

"1. The combination in a wireless signaling system of an antenna, means comprising an electron discharge device having plate and grid circuits associated therewith for producing continuous electrical waves of radio frequency in said antenna, and means for supplying a potential which varies at audio frequencies to the plate circuit of said electron discharge device to vary the amplitude of the waves produced."

"5. The method which consists in producing continuous electrical waves by means of an electron discharge device having grid and plate circuits associated therewith, and varying the amplitude of the waves thus produced by directly applying a variable potential to the plate circuit of said device."

"8. The combination of an oscillation circuit with means comprising an electron discharge device having plate and grid circuits associated therewith, for producing continuous electrical waves of high frequency in said oscillation circuit, and means for supplying a potential which varies at audio frequencies to the plate circuit of said electron discharge device to vary the amplitude of the waves produced."

The parties White and Hartley have taken testimony, but De Forest has not. The Examiner of Interferences ruled that Hartley had established conception prior to any date available to White or De Forest, but he awarded priority to De Forest as to claims 1 to 11, inclusive, on the ground that Hartley was lacking in diligence. As to counts 12 and 13, the award went to White, on the ground that De Forest could not make these claims in his earlier application; in other words, that on the record White was prior to De Forest as to these claims, and that, in the view of the Examiner, Hartley, while first to conceive these claims, was lacking in diligence.

The Board of Examiners in Chief concurred in the ruling of the Examiner that Hartley was first to conceive all the counts of the issue, but reversed the final decision of the Examiner, on the ground that Hartley's conception had been followed by reduction to practice prior to conception by either White or De Forest. The Assistant Commissioner also reviewed the evidence and affirmed the decision of the Board.

Hartley is an engineer in the research department of the Western Electric Company, the assignee of Hartley and real party in interest here. On or about February 15, 1915, Hartley submitted a report to the company in which he reviewed the various systems that had been given consideration by his department. In this report he made reference to the possibility of obtaining modulation by superimposing speech voltage "on the grid of an oscillator," and illustrated this suggestion by two sketches, one of which conforms essentially to the application drawing in this case. If, therefore, the application discloses the invention, so likewise does the sketch; and, since no motion was filed chal-

lenging Hartley's right to make the counts responding to this sketch, such disclosure must be assumed here.

Shortly after this a Mr. Heising, another research engineer in the same department with Hartley, tested Hartley's apparatus, and when called to the witness stand stated that both plate and grid modulation was effected. Heising, while testing the Hartley system, as disclosed by the sketch to which reference has been made, conceived an improvement, consisting in the insertion of an adjustable resistance in the oscillation circuit. These tests were completed some time prior to March of 1915, and a memorandum was filed with the patent department of the company a little later. In May of the same year a patent application for the improved system was authorized, and shortly thereafter drawings were begun, which resulted in the filing of an application in Heising's name during the following September. The invention of the present issue is clearly disclosed in this Heising application.

[1] We agree with the Board and Assistant Commissioner that these tests by Heising constituted a reduction to practice of the Hartley invention. Hathaway v. Field, Lanning, and Colman, 48 App. D. C. 369. Hartley and Heising were employees of a common assignee, were working toward the same end, and their diligence or lack of diligence inured to the benefit of or was chargeable against their employer and assignee.

[2] We are not unmindful of the contentions of both De Forest and White as to the sufficiency of the evidence concerning the Heising tests. But, as pointed out by the Assistant Commissioner, there can be no doubt that these tests were made, and there is no reason why the testimony of these highly skilled and reputable witnesses should not be accepted. Error on the part of the Patent Office tribunals, in a case involving such highly technical subject-matter as is presented here, would have to be made very clear to warrant or justify us in disturbing the conclusions reached.

[3] Since reduction to practice has been established for Hartley prior to the conception of either of the other parties, and no concealment or abandonment followed, the delay on the part of his assignee in filing the application presents no bar to the award of priority to Hartley. The decision, therefore, is affirmed in each appeal.

Affirmed as to No. 1761.
Affirmed as to No. 1762.